## Case No. 1,655.

BORDEN v. HIERN et al.

[1 Blatchf. & H. 293.][1]

District Court, S. D. New York. March Term, 1832.

ADMIRALTY—JURISDICTION — JOINDER OF CAUSES OF ACTION—SEAMEN—DESERTION—COSTS.

1. Parties may join, in one libel, causes of action arising ex contractu, and those arising ex delicto, where the causes of action are so united that the same evidence will apply to all—for example, in a suit in personam, a claim for wages, and a claim for damages for an assault and battery committed on the same voyage.

2. Semble, that parties may join, in a suit in personam, causes of action arising ex delicto against two respondents, with those arising ex contractu against one of them, where the same evidence will apply to all—for example, a claim against a master and a mate, for damages for an assault and battery, and a claim against the master for wages earned on the same voyage.

3. Joinder of causes of action in admiralty, considered.

4. Whether admiralty has jurisdiction over a personal tort committed on board a vessel in a harbor where the tide ebbs and flows, quere.

[Cited in Thomas v. Gray, Case No. 13,898.]

5. A temporary and open absence from his vessel, by a seaman, without objection from the master, in an intermediate port, while the vessel is discharging or taking in her cargo, is not a desertion.

6. Where a libellant joined, in an action in personam, a claim for wages with one for damages for an assault and battery, and recovered his wages, but failed to prove the tort, and the respondent used his evidence regarding the assault and battery to resist the claim for wages: *Held*, that the respondent should recover no costs, and that the libellant should recover costs, deducting the costs of taking his evidence to prove the assault and battery.

In admiralty. This was a libel in personam [by Thomas Borden] against [Charles A.] Hiern, the master, and [Thomas] Harvey, the mate, of the ship Ajax. [Decree for libellant.]

The libel alleged that, on the arrival of the ship at Liverpool, from New-York, the master ordered the libellant on shore, and refused to pay him his wages, or to allow him to return to New-York in the ship, and left him at Liverpool, carrying away his chest and clothes, with a large sum of money; and that both of the respondents committed various assaults and batteries upon him, with great severity and cruelty within the port of New-York, and at sea during the course of the voyage. The libellant claimed to recover against the master his wages and the value of his chest and clothes, and to recover against both defendants damages for the several assaults and batteries. The answer excepted to the joinder of the various causes of action in the libel. It also set up, in defence to the claim for wages and for the value of the chest and clothes, that the libellant wilfully deserted the ship at Liverpool, was duly logged as absent, without leave, for

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

more than forty-eight hours, and never returned, and that the chest left on board was examined and found to contain nothing of any value. It also justified the alleged assaults and batteries, as moderate corrections, necessary to subdue the mutinous spirit of the libellant and maintain the discipline of the ship.

Washington Q. Morton and J. D. Delacey, for libellant.

Abel T. Anderson and Samuel G. Raymond, for respondents.

BETTS, District Judge. This is a compound action against a master and a mate. It seeks a recovery of wages, and of the value of a chest of wearing apparel, against the master, and damages for alleged assaults and batteries committed by the respondents jointly, upon the libellant, in this harbor, and at sea during the course of the voyage stated in the pleadings. The answer replies, with great minuteness, to the allegations of the libel; and the proceedings in the case are diffuse, and crowded with matters not essentially connected with the merits of the action. There are not, in the multifarious proofs, any special features which require discussion. The facts proved are, in substance, that the libellant was taken on board the ship at this port partially intoxicated, and was disorderly and disobedient in his conduct, and that the master and mate forced him on board. But it is not proved that they employed a greater degree of violence than was necessary to enforce subordination. Whatever violence, however, was applied, and whatever wrong, if any, was done, took place at the wharf, in this port, where the ship lay. Only a single case of personal chastisement at sea is proved. That was inflicted by the mate with a small rope's end, by the orders of the master, because of the flagrant inattention to duty and disobedience of orders by the libellant, whilst he was at the helm of the vessel, and was no more in degree than was justified by the circumstances. That portion of the charge is accordingly dismissed as to both of the respondents.

The master fails to sustain his answer in respect to the desertion charged against the libellant, while the libellant does not prove that he was put on shore by the respondents, or refused a passage home, but establishes the fact that he offered himself to the ship the day of her departure from Liverpool, and was told by the mate that he was not wanted, and that his place was supplied by another man. One was in fact shipped and came home in the vessel, and the libellant procured a passage for himself in another ship. On his arrival ·in New-York, he found the Ajax in port, and demanded his wages and his chest and wearing apparel, but obtained neither. On these facts, the questions presented are: 1. Whether these diverse matters may be embraced in a single action; 2. Whether the court has jurisdiction of the tort committed within this harbor; and 3. To what compensation, if any, the libellant is entitled.

1. With regard to the joinder of causes of action, the division and nomenclature of actions at common law afford no rule of decision for admiralty courts; because, as a general rule, the remedy under the civil law is commensurate with the right established by the pleadings and proofs in a cause, and is not made dependent upon the specialties of form which embarrass a suit at common law. Wood, Civ. Law, b. 4, c. 3, § 3 et seq. I speak now of that advanced state and condition of the civil law, from which the doctrines and usages of the English equity and ecclesiastical courts were drawn, and do not regard, as applicable to the inquiry, the formed actions and other niceties which at one time entered into its jurisprudence and entangled its remedies. There is an obscurity in respect to the right of a libellant to unite distinct causes of action in an admiralty suit, which is essentially owing, I apprehend, to the propensity of the bar and courts, in modern times, to identify the pleadings of this court with those of common law tribunals. I do not discuss the utility of the proposed transmutation, or inquire when it may have been countenanced in our own maritime courts, or in the English admiralty. The course of procedure in this country must be essentially at the discretion of each individual court, until a permanent direction shall be given to it by the paramount authority of the supreme court. No formula of pleading, in this respect, has as yet been prescribed by that high authority; but it has pointedly implied, in its adjudications, that a libel may embrace causes of action arising ex contractu, and those arising ex delitco. See The Amiable Nancy, 3 Wheat. [16 U. S.] 546; s. c. [Case No. 331]. And I think there is ground to question the propriety of restraining admiralty suits to single causes of action. The reason which sustains that practice at law, very slightly, if at all, applies to the pleadings in admiralty, where no regard is paid to the names or forms of actions, or to modes of complaint or defence, and where it is never made a point of pleading whether the case rests upon contract or tort. Laying out of view the uniting of the mate with the master, in a suit for wages, this case illustrates what I regard as the spirit of the admiralty practice, and its advantages on this very head. The testimony to support and resist the claims to wages and to damages is essentially the same, because the inquiry, whether or not the conduct of the libellant on the voyage was wrongful, goes directly to the merits of the claim and defence, as to both causes of action. The expense and delay of taking the evidence at large in two suits, and of having two distinct trials on the same facts,

must be incurred at common law, whilst this court hears all the proofs and disposes of the rights of both parties in one action. The union of the mate with the master, as a joint trespasser, was allowable; and, no claim being made against the former for wages, the insertion in the libel of charges against the master for that cause, in no way prejudices the mate, or embarrasses the determination of the case. It is not necessary to speculate, in this instance, upon the admissibility of the form of pleading in that respect, because no case is made against the mate by the proofs, and he stands discharged of the action, on the merits.

2. The next consideration is as to the jurisdiction of the court over the claim to damages for the assault and battery alleged to have been committed in this port. The libellant having failed to support this portion of his case against either respondent, the court will not conclude itself by any present speculation on the question of its jurisdiction. The line of discrimination, if there be one, between a federal jurisdiction and a municipal jurisdiction over torts committed on board of vessels within this harbor, where the tide ebbs and flows, is not one easy to be defined or discerned. There are persuasive reasons for excluding from the cognizance of the federal courts transactions specially appertaining to the supervision of police and municipal powers. Yet, there are several authorities which seem to consider the admiralty jurisdiction as one and the same over torts committed within tide-water harbors, and over torts committed at sea, although the torts be not specifically maritime trespasses, or of a maritime character otherwise than as to their locality. Serg. Const. Law, 202; De Lovio v. Boit [Case No. 3,776]. I am not, however, required to examine the question, in this instance, and shall leave the point open for fuller consideration, when it may come up as the one controlling the decision of the court. In my judgment, the libellant has established no right of recovery against either of the respondents on account of the alleged personal wrongs, even if there were no question of jurisdiction that could interfere with his action, and the libel must be dismissed as to the respondent, Harvey, with full costs to be taxed.

3. The master does not, in my judgment, support his answer charging the libellant with desertion at Liverpool. It does not appear that the libellant left the vessel clandestinely, or with intent to abandon her. He might have been called back at any time, had the master or his officers desired his services. It is obvious, upon the proofs, that their purpose was to leave him in Liverpool, and that they seized upon his temporary absence as a means of exculpating themselves. On the whole evidence, I do not find that the libellant was absent from the ship for forty-eight hours at any one time, without either direct or implied leave. The men necessarily boarded and lodged on shore, and shore laborers are generally employed at the docks to discharge and load ships. When the crew are put to that service, the usage is, to apprise them distinctly, on the arrival of the ship, that the work is to be done by them. It would be springing a trap upon them, if a master might stand silently by, and allow heedless and thoughtless sailors to wander about the docks or the city whilst a cargo was being unladen or taken on board, and might, without personal orders or notice to them to remain with the vessel, cause them to be logged as deserters, and leave them behind destitute. The master has failed to justify his conduct on this occasion, or to show reasonable cause for abandoning the libellant in Liverpool and denying him his wages. I shall, therefore, decree to the libellant his full wages for the voyage out and back, with an additional allowance of ten days' wages for the time employed by him in Liverpool in obtaining a passage home. He is also entitled to full compensation for the value of his chest and effects brought away in the ship, and not restored to him. I shall not examine into their value, but refer that question to the clerk, to take further proofs on both sides, and ascertain and report thereon to the court. The expense incurred by the libellant in taking testimony in support of his claim to damages for assault and battery, must be borne by him. The defence to that charge is complete. No costs, however, are decreed to the respondent, Hiern, against the libellant, because he took and used his proofs in respect to the alleged assaults and batteries, to disprove the libellant's right to wages; and, on that, the main gravamen of the suit, the decision of the court is in favor of the libellant, who, on the coming in and confirmation of the clerk's report, will receive his costs, after making the deduction indicated, together with the amount of his wages, and of his damages from the loss of his property on board of the ship. Decree accordingly.